**LAW OFFICES OF DANIEL ANTONELLI, L.L.C.**
2004 MORRIS AVENUE, SUITE 5
UNION, NEW JERSEY 07083
(908) 688-9303
FAX: (908) 688-9309

*Via Electronic Filing*

July 27, 2010

Clerk, United States District Court
Martin Luther Kingm Jr. Fed. Bldg &
U.S. Courthouse
50 Walnut St.
Newark, N.J. 0710

                **Re:  Michelle Williams v. City of Elizabeth, et al.
                   Civil Action No. 08-5113 (DRD)**

Dear Sir/Madam:

    I represent defendant, Johanna Rivera, in the above captioned matter.  Please accept this letter brief in lieu of a more formal Reply to Plaintiff's Opposition to Ms. Rivera's Motion for Summary Judgment based upon the doctrine of Qualified Immunity.

                **DEFENDANT RIVERA IS ENTITLED TO QUALIFIED IMMUNITY**

> [N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers is constitutionally unreasonable. [T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.
>
> The "reasonableness" of a particular use of force must be determined from the perspective of a reasonable officer on the scene, rather

1

than with 20/20 vision of hindsight.

*Graham v. Connor*, 490 *U.S.* 386, 396-397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

Applying this standard to the undisputed facts in the record, and viewing those facts in a light most favorable to the plaintiff, reveals that Officers Dorilus and Rivera, on the night in question, approached Ms. Williams who was lying on the 5th floor, blocking the entrance to the Karps' apartment door.  The last thing Ms. Williams recalls is getting into bed.  However, unlike most police encounters where the only testimony exists is that of the officer and the plaintiff, here there exists uncontroverted and uncontested facts from not one but two independent eyewitnesses.  Notwithstanding these uncontested facts from independent witnesses, Plaintiff desperately tries to make disputed issues of fact in order to defeat defendant's motion for summary judgment, for an incident that, by plaintiff's own admission lasted no more than two minutes. Quite frankly as a result of the short duration of the encounter, no disputed issues of fact exist.

There is no dispute that despite the officers' repeated verbal commands, and several unsuccessful attempts at trying to wake Ms. Williams, (*see* para 6, 7 and 8 of Defendant Dorilus' Statement of Genuine Material Uncontested Facts), plaintiff suddenly jumped and according to Mr. Karp started to resist and flail her arms and legs

2

at the officers.  Mr. Karp testified that:

> She was resisting them flailing her arms and legs, and he [the male officer, i.e. Officer Dorilus] pinned her against the wall holding her arms down to prevent her from hitting him. [Plaintiff] was swinging her arms and legs at the male officer. . . once they let go of her, she ran back to the door and started ringing the doorbell that we had and smashing on the door. (*see* para 27 and 28 of Defendant Dorilus' Statement of Additional Material Facts)

What is more telling at this point, as result of the struggle between the officers and Ms. Williams and her subsequent resistance, both Mr. and Mrs. Karp removed themselves from the hallway "to get out of the way"  I*d.* at para 30.  The fact that the ensuing struggle that was being observed by both the Karps caused them to remove themselves from the hallway, goes to the reasonableness of the offcers' conduct and use of force since they were both forced to make split-second judgments in a situation that clearly was tense, uncertain, and rapidly evolving.

It is undisputed that plaintiff attempted to flee by running back to an apartment door that was not hers, and it is also undisputed that after plaintiff woke up, danger to the safety of the officers as well as the Karps who removed themselves from the hallway existed. Given the short duration of the encounter, which according to the plaintiff lasted no more than two minutes, a reasonable officer on scene would have used some force against the plaintiff as a means of handcuffing her.  See *Graham*, 490 *U.S.* at 396. ("Fourth Amendment jurisprudence has long recognized that the right to make an arrest

3

or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

In *Winters v. Adams,* 254 *F.3d* 758 (8th Cir. 2001), the court found that a police officer did not use excessive force when he punched a visibly intoxicated person in the eye while trying to remove the individual, who was "thrashing around" and trying to fight with the officers, from a vehicle.  In finding the actions of the officer to be objectively reasonable, the court found that plaintiff was kicking and flailing at the officers and struck the officer before being struck himself.  *Id.* at 765.

Like the officer in *Winters*, the officers here encountered Ms. Williams who suddenly woke up and started to flail her arms and legs at the officers.  To further support Mr. Karp's unrefutted facts of what happened when she woke up, Ms. Williams testified about her state of mind and by her own admission, she believed that people wanted something from her:

> Now I'm confused.  Now I'm totally disoriented.  Yes, totally--- at this point.  Now I thought I was in my bed, now someone is picking me up and there is a woman standing in front of me, and I have no idea what's going on, <u>but they want something from me.  They want something from me.</u>  That's like, in my head it's what did I do to get you to come here, why are you here.  I didn't remember leaving my apartment, so why are you here. (emphasis added).

These are plaintiff's own words.  Plainitiff was flailing her arms and legs because she thought people wanted something from her. She thought someone was trying to take something from her, and having

4

last remembered she went to bed, she did what anyone else would have done, which is to fight back.

Plaintiff in page 26 of her Brief in Opposition states "that Mr. Karp's testimony is credible and [can] infer that plaintiff was not disorderly and not under arrest before she started to flail her arms and legs at the officers.  Based upon the foregoing contradictions in the testimony, a reasonable factfinder could return a verdict in plaintiff's favor on the issue whether probable cause existed to arrest plaintiff for disorderly conduct and resisting arrest."

Quite candidly, however, this is argument of counsel and a total distortion of what Mr. Karp testified to and clearly does not represent factually what he had observed. Mr. Karp testified that plaintiff resisted the officers in the hallway, and continued resisting while she was being placed in the police car.  *See* para 26 through 34, 37, 38 of Dorilus State of Material Facts. When pressed by counsel about "resisting", Mr. Karp emphatically stated "fine, so she wasn't resisting, she was attacking."  *See* Dorilus Exhibit A, Josh Park Transcript T51:13-14.

Moreover, under counsel's argument, anyone under the influence of alcohol and prescriptioin medication can never have the capacity to assault the officers, or be disorderly.  This argument simply does not make sense, because the issue of disorderly conduct or assault on an officer arose <u>after</u> plaintiff suddenly jumped up, which

5

then gave the officers probable cause to arrest her.  Any issue associated with alcohol or prescription medication may provide a defense to the plaintiff's mental capacity at the time of the incident, but it doesn't erase whether or not probable caused existed to arrest her.

Qualified immunity applies to the actions of Officer Rivera, which protects Ms. Rivera from having to stand trial.  Noone is disputing that Officer Rivera used force to overcome Ms. Williams resistance when she thought someone wanted something from her.  The duration of the encounter lasted no more than two minutes.  Once the handcuffs were placed on Ms. Williams, she continued to resist the officers, and resisted getting into the patrol car. Officers of reasonable competence could at least disagree whether Rivera's actins of using a compliance hold and her hands to subdue Ms. Williams who failed to respond to verbal commands, who was flailing her arms and legs at the officers, who ran back to what she thought was her own apartment, was reasonable. A reasonable officer could have believed under these circumstances, Rivera's conduct was lawful and thus, immunity must attach.

Officers Rivera and Dorilus used no more, no less force than was necessary to combat Ms. Williams until she was handcuffed, for an encounter that lasted no more than two minutes. As a matter of law, the officers' conduct was reasonable. Therefore, defendants' Rivera and Dorilus are entitled to qualified immunity.

6

**DEFENDANT RIVERA IS NOT LIABLE FOR INVASION OF PRIVACY**

Much has been made about how plaintiff was dressed at the time she was initially observed by the officers, her subsequent transfer to police headquarters and at the holding cell at headquarters.

A review of Plaintiff's Complaint, and specifically Count III however, reveals that the claim for invasion of privacy is directed at the City of Elizabeth and not the individual officers, Rivera and Dorilus. *See* Document 41 on the PACER System. Plaintiff's prayer for relief states:

> WHEREFORE, pursuant to 42 U.S.C. sec. 1983 and 1988, the plaintiff, Michelle Williams, demands compensatory damages against defendant, <u>City of Elizabeth</u>, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars plus costs, interest, attorney's fees and delay damages. (emphasis added).

Both the allegations in Count III, and plaintiff's prayer for relief fail to name Johanna Rivera, as a defendant who is potentially liable for plaintiff's claim for "invasion of privacy." For these reasons, defendant's motion for summary judgment based on this count ought to be granted.

For these reasons, and the reasons stated in Defendant Rivera's Motion for Summary Judgment, as well as co-defendant Dorilus' Reply Brief, defendant respectfully asks this court to grant her motion based upon qualified immunity, and to dismiss the Complaint against her with prejudice.

```
                              Respectfully submitted,

                              LAW OFFICES OF DANIEL ANTONELLI, LLC
                              Attorneys for Defendant, Johanna
                              Rivera

                              By:  /s/ Daniel Antonelli
                                   Daniel Antonelli, Esq.
```

DA/jkd

*Via Electronic Filing and regular mail to:*

    Robert F. Varady, Esq.
    Raymond S. Londa, Esq.
    Fincourt B. Shelton, Esq.

*Via Ordinary Mail to:*

    The Honorable Dickinson R. Debevoise, U.S.D.J.
    Honorable Michael A. Shipp, U.S.M.J.

**PROOF OF MAILING**

I certify on the date set forth below, the within Reply Letter Memorandum is being filed electronically with the United States District court Clerk, Newark vicinage, and that true copies of all Reply papers are being served upon the Honorable Dickinson R. Debevoise, U.S.D.J. and the Honorable Michael A. Shipp, U.S.M.J. and all counsel of record by ordinary mail.

                          LAW OFFICES OF DANIEL ANTONELLI, LLC
                          Attorneys for Defendant, Johanna Rivera

                          By: /s/ Daniel Antonelli
                                Daniel Antonelli, Esq.

Dated: July 27, 2010